IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Jerome Stary,<br><br>　　　Petitioner,<br><br>vs.<br><br>Terry L. Stewart, et al.,<br><br>　　　Respondents. | No. CV 00-585-TUC-FRZ<br><br>**ORDER** |

### I. Procedural Background

Pending before the Court is Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. United States Magistrate Judge Bernardo P. Velasco issued a Report and Recommendation pertaining to the Petition; in the Report and Recommendation, Magistrate Judge Velasco recommended denying all of Petitioner's claims and dismissing this case with prejudice. The Report and Recommendation indicated that any party could file written objections after being served with a copy of the Report and Recommendation. Petitioner filed objections to the Report and Recommendation. Respondents did not respond to Petitioner's objections, and they did not file any objections to the Report and Recommendation.

### II. Standard for Reviewing a Report and Recommendation

The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*,

170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

### III. Discussion[1]

#### A. Federal Habeas Petitions: Standard of Review

As the Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court will apply the AEDPA and must review the claims consistent with the provisions of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). On habeas review, a state court's findings of fact are entitled to a presumption of correctness. *See* 28 U.S.C. §2254(e)(1); *Wainwright v. Witt*, 469 U.S. 412, 426 (1985). Furthermore, this Court may only overturn a state court finding of fact if Petitioner shows by clear and convincing evidence that the finding was erroneous. *See* 28 U.S.C. §2254(e)(1). A final decision of the state court will be reversed only where it is "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States . . . or . . . was based on an unreasonable determination of the facts in light of the evidence presented to it in the state court proceedings." 28 U.S.C. §2254(d).

#### B. Facts Pertaining to Petitioner's Conviction

As stated by the Arizona Court of Appeals, the relevant facts are as follows:

> Stary met Danny Craig while living in Cicero, Illinois. Craig contacted, and later became a confidential informant for, the Bureau of Alcohol, Tobacco, and Firearms (ATF) after Stary said he was interested in purchasing explosives and narcotics. The ATF investigation shifted to Arizona after Stary and Craig discussed the prices of cocaine and the apparent ease of obtaining explosives here. Agent Dobyns of the ATF devised a plan for Stary and Craig to purchase narcotics and explosives in Tucson from Undercover officers in a "reverse sting" operation, one in which the government provides the contraband. After Dobyns telephoned Stary to confirm the plan, Stary and Craig drove to Tucson towing jet skis, with a little over $31,000 hidden inside one of them. Shortly after their arrival, they met Dobyns and another undercover officer in a motel room where Stary agreed to purchase two kilograms of cocaine. Stary then went to the motel parking lot with Dobyns and retrieved the money inside the jet ski. Stary was arrested shortly after he and Dobyns returned to the motel room. The transaction was tape-recorded by officers in the next room.

---

[1] As the Report and Recommendation throughly discussed the relevant facts and law, the Court will not repeat that entire discussion; rather, the Court will only discuss these issues as necessary to resolve the objections filed by Petitioner.

*See* Respondents' Ex. D, Arizona Court of Appeals Decision at 2-3; *see also* 28 U.S.C. §2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Wainwright v. Witt*, 469 U.S. 412, 426 (1985)(state court's findings are entitled to a presumption of correctness).

Petitioner's first jury trial resulted in a mistrial after the government's opening statement included facts which the trial court had prohibited. At his second trial, the jury found Petitioner guilty of conspiracy to transfer a narcotic drug, and he was sentenced to a four year, mitigated term of imprisonment.

**C. Petitioner's Objections to the Report and Recommendation**

i. Entrapment

Petitioner argues that the Report and Recommendation incorrectly determined that his entrapment claim was not subject to federal habeas review. The Report and Recommendation correctly resolved this issue; however, assuming *arguendo* that this claim is subject to review, Petitioner fails to address or otherwise refute the Report and Recommendation's alternative conclusion that a review of the merits of the claim nonetheless shows that it is groundless. The Report and Recommendation stated in relevant part: "[F]acts presented at trial . . . demonstrate that entrapment did not exist as either a matter of law or question of fact for the jury. Petitioner was the person who decided to use jet skis to transport the drug purchase money . . . He also planned to use the skis to transport the cocaine back to Illinois . . . Petitioner is the one to claim he had been a drug dealer for ten years as well as being well aware of recent drug prices in Florida, Texas, and Illinois . . . Furthermore, Petitioner is the one who informed Agent Dobyns that he would be returning in a few weeks to get four more kilos of cocaine . . . All of this and more in the record demonstrate that Petitioner was not an 'unwary innocent.'" *See* Report and Recommendation at 5-6. The Report and Recommendation properly found that Petitioner's entrapment claim

1 is without merit. As such, Petitioner has failed to show that the state court action was
2 "contrary to, or involved an unreasonable application of, clearly established federal law" or
3 "was based on an unreasonable determination of the facts in light of the evidence presented
4 to it in the state court proceedings." 28 U.S.C. §2254(d). Petitioner's entrapment claim is
5 denied.

ii. Double Jeopardy

Petitioner argues that the government intentionally and improperly sabotaged his first trial such that he was required to move for a mistrial. As these circumstances support a finding of double jeopardy which undermines the conviction from his second trial, Petitioner contends that the Report and Recommendation improperly rejected this claim. Contrary to Petitioner's assertion, the record in this case indicates that the government's actions leading to the mistrial were not intentional and were not taken in bad faith. The Report and Recommendation recognized this distinction, and correctly resolved the issue as follows:

> The Double Jeopardy Clause generally does not bar retrial of a defendant after a mistrial has been declared at the defendant's request. There is an exception to the rule if the mistrial was caused by prosecutorial misconduct intended to goad the defendant into moving for a mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 676 . . . (1982). In analyzing a prosecutor's conduct, the trial court must make a finding from the objective facts and circumstances to establish whether the conduct was intentional. 456 U.S. at 675 . . . No relief will be granted where the prosecutor's conduct is mistaken, careless, or even harassing. *U.S. v. Valadez-Camarena,* 163 F.3rd 1160, 1162-63 (10th Cir. 1998)
>
> In Petitioner's case, the trial court, prosecutor, and defense counsel spent several sessions (before the mistrial, immediately after the mistrial and at a further proceedings) fleshing out the court's ruling, it's limits, and the prosecutor's thought processes before a final decision was made. An impartial review of the trial record demonstrates that the prosecutor did not understand the limits of the court's ruling nor did she intend to cause or goad the defendant into requesting a mistrial. No doubt part of the problem existed because the trial atmosphere was not one of arguing a motion and then hearing the court's ruling, but rather one of argument, ruling followed by clarifying (without success), and negotiating toward a more favorable position (with uncertain results), such that a mistrial almost seemed inevitable.
>
> Nevertheless, a review of the record establishes support for the trial court's conclusion that the conduct was erroneous, but not intentional misconduct warranting dismissal of the charges.

*See* Report and Recommendation at 6-7. As the state court action was not "contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on

- 4 -

an unreasonable determination of the facts in light of the evidence presented to it in the state court proceedings," Petitioner's claim fails. *See* 28 U.S.C. §2254(d).

### iii. Outrageous Government Conduct

Petitioner argues that the Report and Recommendation erred in rejecting his outrageous conduct claim because the record demonstrates that he was coerced into committing the crime in question. Contrary to Petitioner's assertion, a review of the record does not reflect any coercion whatsoever. Rather, the government merely presented Petitioner with the opportunity to consummate the crime in question, Petitioner was predisposed to commit the crime, and he willingly entered into this illegal transaction. The Report and Recommendation properly resolved this issue, and stated in relevant part:

> In order for a petitioner to prevail on a claim of outrageous governmental misconduct, the record before the court . . . must show that the government's conduct amounted to the "engineering and direction of [a] criminal enterprise from start to finish." *Sanchez v. United States,* 50 F.3d 1448, 1452 (9th Cir. 1995). Furthermore, the governmental conduct must be "so grossly shocking and outrageous as to violate the universal sense of justice." *U.S. v. Barrera-Moreno,* 951 F.2d 1089, 1092 (9th Cir. 1991).
> Petitioner claims that he became involved in this case because of the six weeks of contact by the confidential informant who first tried to get the Petitioner to buy explosives then switched to cocaine purchases. Other than claiming Petitioner was pressured into engaging in this criminal conduct, he makes no assertions regarding the nature, quality, type and duration of this pressure. There are no factual assertions from which anyone could conclude that Petitioner's will was overcome by any coercion, violence, or brutality. *United States v. Gaviria,* 116 F.3rd 1498, 1534 (D.C. Cir 1997). Petitioner's biggest complaint is that the agents spent more time talking to the confidential informant than investigating the informant or dealing with him directly. Petitioner certainly makes no claim that the agents themselves did any thing wrong other than provide the place, time and cocaine for him to purchase. This simply is not enough to support any claim the Petitioner is alleging. No one but the Petitioner came up with the $31,000 he had to buy cocaine. Contrary to Petitioner's assertion that the government came up with the jurisdiction for this offense, it was Petitioner who wanted explosives from Arizona. Petitioner is also the person who decided to purchase cocaine and not more than $250 worth of C-4 explosive.
> Petitioner's claim was aptly decided by the Arizona Court of Appeals as follows:
>> A court may bar a prosecution if the government's investigatory conduct "approaches 'coercion, violence, or brutality to the person.'" That level of conduct was not present in this case. Although the ATF used Craig as a paid, confidential informant in its investigation, the record does not show or suggest that either the ATF or Craig used any intimidation, undue pressure, threats, or violence to force Stary to participate in the transaction. In addition, we cannot say the ATF's conduct was "so grossly shocking and so outrageous as to violate the

> universal sense of justice." Stary's claim of outrageous government conduct thus fails as a matter of law and did not bar his prosecution.
>
> (Exhibit C: Court of Appeals Memorandum, p.5).

*See* Report and Recommendation at 8-9. Petitioner has failed to demonstrate that the state court action was "contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented to it in the state court proceedings." 28 U.S.C. §2254(d). Petitioner's claim is denied.

iv. <u>Failure to Preserve Evidence</u>

Lastly, Petitioner argues that the Report and Recommendation erroneously rejected his failure to preserve evidence claim as it is obvious that the Government should have recorded conversations between him and the confidential informant, and such conversations would have revealed that he was an unwilling participant that was goaded into committing the crime at issue. As such, Petitioner asserts that he was prejudiced by the Government's failure to preserve such evidence. Contrary to Petitioner's assertions, a review of the record reflects that his claims are simply speculation as there is no evidence that such recordings would have assisted Petitioner in any manner. Furthermore, Petitioner testified at trial and was able to fully explain his version of events which the jury obviously rejected. The Report and Recommendation properly denied Petitioner's claim, and explained in relevant part:

> Petitioner is not claiming the government, once having acquired evidence, destroyed it to the detriment of Petitioner's defense. Instead Petitioner claims that the government should have tape-recorded the confidential informant in the same manner in which his conversations with law-enforcement were memorialized. Petitioner contends that had the confidential informant's conversations with the agents been recorded, these tapes would reflect that Petitioner had no disposition to commit the offense. The Petitioner makes no averrals as to what statements would have been related as coming from Petitioner through the confidential informant that would support his contention.
> Although Petitioner's contends that there are no recorded statements of his conversations with the confidential informant, there were some recordings of conversations between the informant and agents (R.T. 12/3/97 at 109) and the Petitioner, informant and agents (R.T. 12/3/97 at 109). None of those statements were used by defense counsel in the examination of the informant at trial. There appears to be no reason other than speculation to suppose a recording of all of Petitioner's contacts with the informant would have been helpful to the Petitioner. Speculation does not meet the required burden.
> In any event, Petitioner was called as a witness in his own defense and was thereby capable of informing the jury *of* his version of the events. The jury no doubt

- 6 -

> was called upon to resolve all discrepancies between the two versions of events. *See Herrera v. Collins*, 506 U.S. 390, 401-02, 113 S. Ct. 853, 861 (1993). Unfortunately for Petitioner the issues were resolved adversely to him.
> This Petitioner had the ability to argue to the jury that the government's failure to tape the conversations in issue was a basis sufficient to raise a reasonable doubt and thereby acquit the Petitioner. The instruction reads as follows:
>> If you determine that the State has lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues in this case, and that the explanation for the loss, destruction, or failure to preserve is inadequate, then you should assume that the evidence was unfavorable to the State. This fact alone may create a reasonable doubt about the defendant's guilt.
>
> This instruction was sufficient to protect any due process rights the Petitioner claims were infringed.
> The Court of Appeals resolved the preservation of evidence issue adversely to Petitioner by finding that the record before it "did not show any bad faith on the part of the police," nor that there was any showing "the recordings would have preserved potentially exculpatory evidence". The Court also pointed out that the State "does not have an affirmative duty to gather evidence for the accused in proving his defense." The State's duty is only to preserve obviously material evidence that is reasonable available. (Exhibit D at 7).

*See* Report and Recommendation at 9-10. As the state court action was not "contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented to it in the state court proceedings," Petitioner's failure to preserve evidence claim is denied. *See* 28 U.S.C. §2254(d).

### D. The Remaining Issues

As to the remaining issues that were not objected to by the parties, the Court has reviewed the entire record and concludes that Magistrate Judge Velasco's recommendations are not clearly erroneous. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED as follows:

(1) United States Magistrate Judge Velasco's Report and Recommendation (Doc. #27) is **accepted and adopted**;

(2) Petitioner's Petition for a Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. §2254 is **denied**;

1  (3) This case is **dismissed with prejudice**;
2  (4) The **Clerk of the Court shall enter judgment accordingly, and close the file in this**
3  **matter**.

5  DATED this 22nd day of December, 2006.

*Frank R. Zapata*
FRANK R. ZAPATA
United States District Judge